## El Pueblo *v.* Rivera.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 18.—Resuelto en junio 12, 1907.

Juicio—Suspensión del Mismo.—La falta de comparecencia de un testigo que se considere necesario para la mejor averiguación de los hechos que se persigan, es motivo suficiente para decretar la suspensión del juicio.

Instrucciones de la Corte—Asesinato en Primer Grado—Prueba de Circunstancias Atenuantes.—La siguiente instrucción dada por la corte al jurado, ha sido aprobada por estar ajustada á ley y no envolver perjuicio alguno para el acusado: "Una vez, señores jurados, probado que la muerte se ha realizado, que la muerte ha sido consumada, que el crimen ó el delito se ha realizado, es de la exclusiva competencia del acusado, probar si en el hecho han habido circunstancias atenuantes ó que justifique ó eximan de responsabilidad criminal, á menos que de la prueba practicada por el ministerio público, se deduzca la existencia de esas circunstancias atenuantes de la responsabilidad criminal, ó que esa prueba del Pueblo de Puerto Rico tienda á la demostración de esas circunstancias."

Pruebas—Reglas de Evidencia en Casos Civiles y Criminales.—Las reglas de evidencia que gobiernan la práctica de las pruebas en los asuntos civiles, son aplicables también á los casos criminales.

Id.—Edad de los Testigos para que Puedan ser Admitidos á Declarar— Niños Menores de Diez Años.—La ley no determina la edad que deben tener los testigos para que puedan ser admitidos á declarar, peró para que los niños menores de diez años puedan ser admitidos como testigos es indispensable que antes de tomársele juramento se establezca su capacidad para declarar, haciéndose un examen del grado de su inteligencia, de la significación del juramento que ha de prestar y de sus facultades para recibir impresiones exactas de los hechos sobre que haya de declarar y para relatarlos con exactitud.

Id.—Testimonio de Referencia.—Declaraciones hechas por la interfecta, días antes de la comisión del delito, no son admisibles como prueba en juicio por tener el carácter de testimonio de referencia.

Id.—Apelación—Nuevo Juicio.—La admisión de la declaración de un niño menor de diez años de edad, sin que previamente se estableciera su capacidad para declarar, y la de cualquier otra prueba que fuera improcedente, en los casos en que haya, ó pueda haber perjudicado los derechos sustanciales del acusado, es motivo para la revocación de la sentencia apelada y la concesión de un nuevo juicio.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Travieso.*

Abogado del apelado: *Sr. Rossy, Fiscal.*

El Juez Presidente Sr. Quiñones, emitió la opinión del tribunal.

El día 12 de diciembre de 1905, y ante la Corte de Distrito del Distrito Judicial de Mayagüez, formuló el fiscal de la misma, Benjamin J. Horton, la acusación siguiente:

"En el nombre y por la autoridad de "El Pueblo de Puerto Rico," etc.

"El fiscal formula acusación contra Eleuterio Rivera por el delito de asesinato en primer grado (*felony*) cometido como sigue:

"El citado Eleuterio Rivera, entre siete y ocho de la mañana del día siete de noviembre del corriente año de 1905, en el barrio de "Marías," de la municipalidad de Añasco, Distrito Judicial de Mayagüez, Puerto Rico, alevosa, deliberada y premeditadamente, y demostrando tener un corazón pervertido y maligno, dió muerte ilegal á la mujer Felicia García, para lo cual hizo uso de un cuchillo ó puñal, infiriéndole dos heridas, una leve en la tercera falanje del dedo índice derecho; y otra herida que le produjo la muerte instantánea, que penetró por el pezón del seno izquierdo, por el sexto espacio intercostal, hiriendo el parénquima pulmonar izquierdo, atravezó el corazón completamente y terminó en el pulmón derecho.

"Este hecho es contrario á la ley para tal caso prevista y á la paz y dignidad de "El Pueblo de Puerto Rico."—Benjamin J. Horton, Fiscal del Distrito.

"La acusación que antecede está basada en el testimonio de testigos examinados, bajo juramento, creyendo solemnemente que existe justa causa para presentarla al tribunal.—Benjamin J. Horton, Fiscal del Distrito.

"Jurado y firmado ante mí, hoy día 14 de diciembre de 1905.
—Francisco Llavat, Secretario del Tribunal de Distrito de Mayagüez.''

En 1°. de marzo del año siguiente de 1906, enterado en
corte abierta de la anterior acusación el acusado Eleuterio
Rivera se declaró no culpable, y llegado el día señalado para
la continuación del juicio (el 24 de marzo), compareció el acu-
sado por su abogado Lcdo. Don Martín Travieso, y el Pueblo
de Puerto Rico por su Fiscal el Hon. Libertad Torres Grau,
el que solicitó de la corte la suspensión del juicio, á causa de
no haber comparecido un testigo que el ministerio público
consideraba de gran importancia para el exclarecimiento
de los hechos.

La corte acordó la suspensión del juicio hasta el 26 del
mismo mes de marzo á las nueve de la mañana.

Llegado este día se llamó la causa á la vista por su orden
de señalamiento.    Compareció el Pueblo de Puerto Rico por
su Fiscal Libertad Torres Grau y el acusado por su abogado
defensor, Lcdo. Don Martín Travieso, quienes anunciaron
estar listos para entrar en juicio.    Se sorteó el jurado y re-
sultaron electos doce buenos vecinos del distrito, que fueron
juramentos, con arreglo á la ley para conocer de esta causa.
Se practicaron las pruebas presentadas por el fiscal y la de-
fensa; y el jurado, después de oir la acusación presentada por
el fiscal, la alegación de no culpable hecha por el acusado,
las pruebas practicadas por ambas partes, los argumentos del
fiscal y de la defensa, y las instrucciones de la corte, se reti-
ró á deliberar, regresó, y en audiencia pública, por medio de su
presidente, dió por escrito el siguiente veredicto:

"Nosotros, el jurado, y en representación el presidente que suscri-
be, declaramos culpable del delito de asesinato en primer grado al acu-
sado Eleuterio Rivera.''

En vista del anterior veredicto declarando al acusado
Eleuterio Rivera culpable del delito de asesinato en primer
grado, la corte lo declaró convicto del expresado delito y se-

ñaló para dictar sentencia, la audiencia del día 29 del mismo mes de marzo.

Llegado este día dictó la corte de distrito la siguiente sentencia:

"En la ciudad de Mayagüez á los veinte y nueve días del mes de marzo de mil novecientos seis. Siendo este día el señalado por la corte para pronunciar la sentencia en la causa arriba expresada y teniendo en cuenta que el acusado lo fué en corte abierta por el fiscal del distrito del delito grave (*felony*) de "asesinato en primer grado," en la persona de Felicia García, vecina del barrio de "Marías," término municipal de Añasco, correspondiente al distrito judicial de Mayagüez; que en el acto del *arraignment* dicho acusado se confesó "no culpable" del referido delito; que señalado día y hora para la celebración del juicio, se llevó á efecto por ante el Jurado legalmente constituído, el que dió un veredicto declarando á dicho acusado Eleuterio Rivera, culpable del delito de asesinato en primer grado; que el aludido acusado fué informado por la corte de la naturaleza del cargo que se le hizo, de las alegaciones de su defensa y de los términos del veredicto pronunciado por el jurado y habiendo sido además interrogado si tenía alguna causa legal para demostrar que no procedía dictar sentencia contra él, manifestó "que no era autor del delito", y no siendo esta una causa bastante á juicio de la Corte para interrumpir el pronunciamiento de la sentencia, fué desestimada.

*Por tanto*: La Corte, en cumplimiento de lo que dispone el precepto del artículo 202 del Código Penal vigente, en su primer apartado, esto es: "Que toda persona culpable del delito de asesinato en primer grado, incurrirá en pena de muerte"; y en atención á que el acusado Eleuterio Rivera ha sido convicto del crimen de asesinato en primer grado sin que á favor del mismo se haya apreciado ninguna circunstancia atenuante ó de mitigación, condena á dicho Eleuterio Rivera á sufrir la pena de muerte:

"En su virtud, líbrese oportunamente el correspondiente mandamiento, que será dirigido al marshal del distrito, Enrique F. Rossy, y en su defecto, á cualquiera otro de los oficiales de la corte, ordenándole conduzca al expresado reo, de la cárcel común del distrito donde se encuentra, al Presidio Departamental ó Penitenciaría de San Juan, y lo entregue allí al jefe ó encargado del mismo; se ordena y decreta, además, que en el día que se señalará en dicho mandamiento se proceda á la ejecución de esta sentencia, la que deberá tener lugar dentro de los

muros de dicha Penitenciaría, colgando al reo por el cuello hasta que haya expirado.

"Y que Dios Todopoderoso tenga clemencia con su alma. —Isidoro Soto Nussa, Juez de la Corte de Distrito del Distrito Judicial de Mayagüez, P. R."

Contra esta sentencia interpuso apelación el acusado Eleuterio Rivera, por conducto de su abogado defensor Lcdo. Don Martín Travieso, por escrito, del que dió copia al fiscal del distrito, Señor Torres Grau, en 2 de abril de 1906, y dos días después, ó sea el día 6 de abril, fué presentado en la secretaría de la corte.

Aprobado y firmado por el juez el pliego de excepciones formulado por el abogado defensor del acusado Don Martín Travieso, y remitidas á esta superioridad las transcripciones del récord, inclusa una copia literal certificada del referido pliego de excepciones, como hubiesen transcurrido los veinte días señalados para la comparecencia del apelante, sin que se hubiera presentado ningún abogado para llevar su representación, le fué designado de oficio por esta Corte Suprema el Abogado Don Antonio Alvarez Nava, quien aceptó el cargo y formuló su alegato, con la solicitud de que se revocara la sentencia, con los demás pronunciamientos legales correspondientes; sosteniendo estas mismas conclusiones en el acto de la vista, las que fueron contestadas por el Señor Fiscal, impugnándolas y pidiéndo á su vez la confirmación de la sentencia con las costas.

El fundamento principal de la defensa del procesado en su alegato, y después en el acto de la vista, estriba en que, habiendo admitido el juez de la corte sentenciadora á declarar como testigo de cargo al niño de cinco años de edad Aurelio Vélez, sin haber tratado de investigar previamente su desarrollo intelectual, para poder juzgar de su capacidad para declarar como testigo; así como el testimonio del Dr. Casalduc, como testigo de referencia en lo relativo á las manifestaciones que dijo le hiciera la interfecta en varias ocasiones antes de morir, sobre las amenazas de muerte que le hacía el procesado, por

cuyo motivo no se determinaba á romper las relaciones amo-
rosas que con él llevaba, se había privado al procesado de una
de las más preciadas garantías que le concedía la ley para lle-
gar á obtener un juicio recto é imparcial, por lo que la senten-
cia debía ser anulada y remitirse la causa á un nuevo juicio.

Estas alegaciones de la defensa nos obligan, pues, á exa-
minar las excepciones tomadas en el acto del juicio por el abo-
gado defensor del acusado contra las resoluciones de la cor-
te, las que aparecen refundidas en el pliégo de excepciones
formulado por el mismo abogado defensor después de pro-
nunciada la sentencia, y que aprobada y firmada por el Juez de
la corte sentenciadora, el Hon. Isidoro Soto Nussa, viene
inclusos en el récord y copiado á la letra, dice así:

"*Pliego de Excepciones.* —Esta causa se llamó para juicio el día
24 de marzo de 1906.

"Se constituyó el jurado, y después de habérsele leído al acusado el
acta de acusación y de haber hecho aquél la alegación de "no culpa-
ble," el ministerio público presentó una moción oral para la suspensión
del juicio, en esta forma: "acabo de informarme ahora de que la testi-
go Carmen Feliciano no ha venido y yo no me atrevo entrar en juicio
sin esta testigo." La corte suspendió el juicio por cinco minutos, des-
pués de los cuales se reanudó la sesión. La corte dictó enseguida la si-
guiente resolución:

"Siendo de importancia el testimonio de la testigo Carmen Felicia-
no y habiendo manifestado el Señor Fiscal serle imcompletamente im-
posible entrar en juicio sin que comparezca esta testigo, la corte sus-
pende el juicio para continuarlo á las nueve de la misma.

"La defensa tomó excepción de la resolución de la corte, fundán-
dola en que el ministerio público no había demostrado que la declara-
ción de la testigo ausente fuese material y necesaria para la continua-
ción del juicio.

"Al declarar el testigo Aurélio Vélez, un niño de cinco años, la
defensa presentó la siguiente moción:

"Yo desearía que antes de que el testigo continúe su declaración, la
corte lo examine preliminarmente acerca de sus condiciones para ser
testigo aquí, para que podamos ver si se da cuenta del juramento que
ha prestado y de la obligación que tiene de decir verdad.

"Á lo que el Honorable Juez Presidente contestó: "Con respecto
á la capacidad de este testigo, entiendo que por el resultado de su decla-

ración se sabrá y entonces la corte lo examinará acerca de cada uno de los puntos respecto á los cuales ha contestado, á ver si se da cuenta, no solamente de los objetos, sino de la naturaleza de esos mismos objetos; de modo, que en lugar de ser el procedimiento *á priori*, será *á posteriori*.''

''El Abogado defensor respondió: ''La defensa entiende con el debido respeto, que tiene derecho á que el examen del testigo sea hecho *á priori;* antes que proceda la declaración.''

''La corte dictó la siguiente resolución: ''La corte dice que será á *posteriori* porque el objeto será el mismo.

''La defensa tomó excepción de la resolución de la corte.

''Al declarar el Perito Dr. Eduardo Casalduc acerca de las condiciones de la herida que causó la muerte de la interfecta, el ministerio fiscal le preguntó que si la interfecta Felicia García, que era una de sus clientes, le hizo alguna vez manifestaciones sobre su modo de vivir. La defensa se opuso á que se relatasen esas manifestaciones, pues entendía que el Dr. Casalduc había sido llamado como perito. La corte resolvió que el Dr. Casalduc podía continuar declarando como testigo; y al empezar el testigo á relatar las manifestaciones que le había hecho la interfecta, la defensa se opuso á que se relatasen tales manifestaciones.

''La corte respondió: ''Creo que la intención del ministerio público será en todo caso impugnar la buena reputación del acusado y en este concepto la admito.''

''La defensa: ''Me parece que el ministerio público no puede hacer esto hasta que el acusado no presente pruebas de buena reputación.

''La corte admitió las manifestaciones hechas por la interfecta al Dr. Casalduc, fundándose en la presunción de derecho, de que todo acusado se presume de buen carácter mientras no se pruebe lo contrario.

''La defensa tomó excepción de la resolución de la Corte.

''En sus instrucciones al jurado, la corte dió la siguiente:

''Una vez, señores jurados, probado que la muerte se ha realizado, que la muerte ha sido consumada, que el crimen ó el delito se ha realizado, es de la exclusiva competencia del acusado probar si en el hecho han habido circunstancias atenuantes ó que justifiquen ó eximan de responsabilidad criminal, á menos que de la prueba practicada por el ministerio público, se deduzca la existencia de esas circunstancias atenuantes de la responsabilidad criminal ó que esa prueba de El Pueblo de Puerto Rico tienda á la demostración de esas circunstancias.

"La defensa tomó excepción á esa instrucción.

"Mayagüez, á cuatro de abril de 1906. —Martín Travieso, Abogado del acusado."

Ahora bien, pasando al examen de las excepciones tomadas por la defensa, la primera ó sea la relativa á la suspensión del juicio que decretó la corte, por la falta de comparecencia de un testigo, entendemos que no es de tomarse en consideración; pues siempre se ha estimado como motivo suficiente para la suspensión la falta de comparecencia de un testigo que se considere necesario para la mejor averiguación de los hechos que se persiguen, máxime cuando con la suspensión del juicio por uno ó dos días más, como ha sucedido en el presente caso, no se atenta contra ninguno de los derechos sustanciales del acusado.

Lo mismo debe decirse respecto de la instrucción dada por el Juez al jurado sobre el contenido del artículo 247 de la Ley de Enjuiciamiento Criminal, pues aparte de que dicha instrucción era perfectamente correcta, porque se ajustaba estrictamente al precepto de la ley, con ella tampoco se causaba al procesado ningún perjuicio.

No sucede lo mismo respecto á la otra excepción tomada por la defensa contra la resolución del juez, admitiendo á declarar entre los testigos de cargo al niño de cinco años de edad Aurelio Vélez, sin investigar previamente su capacidad para declarar contra las protestas del abogado defensor del acusado, que una y otra vez insistió en que debía investigarse la capacidad del testigo antes de tomarse su declaración para poder juzgar si tenía ó no idea exacta de lo que era el juramento y de la obligación que le imponía de decir verdad.

El juez desestimó la moción hecha sobre este particular por el abogado defensor, y resolvió que esa investigación debía hacerse *á posteriori,* ó sea después que el testigo hubiere declarado, porque el resultado sería siempre el mismo; y en efecto, el testigo declaró ante el jurado no sabemos qué, porque no lo dice el pliego de excepciones, ni se ha presentado una ex-

posición de hechos practicada en debida forma, tomando excepción la defensa contra la resolución del Juez de la corte.

Nuestra Ley de Enjuiciamiento Criminal no determina la edad que deban tener los testigos para que puedan ser admitidos á declarar en las causas criminales. El Código Penal tampoco lo dice; pero tenemos el artículo 1102 del Código Penal de California, según el cual "las reglas de evidencia que rigen para las acciones civiles, son aplicables también á las acciones criminales, á excepción de aquellos casos en que este Código disponga lo contrario."

Ahora bien; según el artículo 38 de la Ley de Evidencia, de 9 de marzo de 1905:

"Todas las personas, sin excepción, fuera de lo especificado en los dos artículos siguientes, que hallándose en posesión de sus sentidos, pueden percibir y, percibiendo, comunicar sus percepciones á otras personas, son aptas para testigo."

Y según el artículo 39 nó podrán ser testigos las siguientes personas:

"1o. Los que no estuvieren en su juicio cabal al presentarse á examen; y
"2o. Los niños menores de 10 años que parecieren incapaces dé recibir impresiones exactas de los hechos respecto de los cuales fueren examinados, ni relatarlos con exactitud."

El artículo 40 no contiene ninguna otra disposición que pueda ser pertinente al caso.

De estos preceptos de la Ley de Evidencia se deduce, pues, que para que los niños menores de 10 años de edad puedan ser admitidos á declarar en los asuntos civiles y por analogía en las causas criminales, es indispensable que parezcan capaces de recibir impresiones exactas de los hechos sobre que fueren examinados y relatarlos con exactitud para lo cual parece lógico que antes de tomarse el juramento y recibírsele declaración, se haga por el tribunal alguna investigación de su capacidad, porque de lo contrario podían resultar ambas diligen-

cias ineficaces y baldías con grave daño para la defensa del acusado por los prejuicios que puedan llevar al ánimo del jurado la declaración de un testigo inconsciente de la santidad del juramento y de la obligación que le impone de decir verdad, ó que no se dé cuenta exacta de los hechos ó no sepa exponerlos al tribunal con la debida exactitud y claridad.

Sobre este particular se registran decisiones importantísimas dictadas por la Corte Suprema de California.

En el caso de *The People* v. *Bernal,* 10 Cal., 67; el acusado fué procesado y convicto del delito de violación, cometido en la persona de una niña de 8 años de edad. En el juicio, la Corte permitió, contra las protestas del acusado, que la niña fuera juramentada y que declarara como testigo de cargo, sin haber sido examinada previamente con respecto á su competencia ó capacidad para declarar . Sentados estos antecedentes dijo la Corte Suprema de California:

"No hay una edad fija dentro de la cual los niños deban ser excluídos de testificar. Su capacidad ha de ser establecida, no por su edad, sino por el grado de su inteligencia y conocimiento. Es esencial que posean suficiente inteligencia para percibir impresiones verdaderas de los hechos respecto de los cuales han de ser examinados, suficiente capacidad para relatarlos correctamente y suficiente instrucción para apreciar la naturaleza y obligación de un juramento. El tribunal es el que ha de resolver la cuestión de su competencia ó capacidad cuando se les ofrezcan como testigos. Si fueren de más de 14 años de edad, se presume que poseen los conocimientos é inteligencia necesarios; pero si fueren de una edad menor, se presume lo contrario, y esa presunción hay que destruirla por medio de un examen que debe hacer el tribunal, ó que debe hacerse bajo su dirección y en su presencia, antes de que puedan ser juramentados.

"Revocada la sentencia y ordenada la celebración de un nuevo juicio."

En el caso de *The People* v. *Suwist,* 136 Cal., 520, dijo la corte:

"La capacidad de un niño de 6 años de edad para declarar como testigo de cargo, en una causa de acometimiento con intención de co-

meter el infame delito contra natura, ha de ser establecida por el tribunal sentenciador, dèspués de un exàmen previo, que no dcbe celebrarse á presencia· del jurado, y que ha de tener por objeto probar su inteligencia; y si de dicho examen resultara que es capaz para entender lo que con él se hizo, y para relatarlo verídicamente, no puede decirse que el tribunal sentenciador hubiere abusado de su discreción al permitirle declarar.''

En el presente caso, ni se practicó un examen previo de la inteligencia del niño Aurelio Vélez que se presentó por el fiscal como testigo de cargo, ni se hizo por el Juez declaración alguna respecto de su capacidad; y, sin embargo, el niño declaró ante el Jurado.

En el caso de *The People* v. *Baldwin,* 117 Cal., 244, declaró la corte:

''Que la admisión de la declaración de una niña como testigo de cargo, contra objeciones formuladas por falta de suficiente edad, es discrecional, y en los casos en que el tribunal hubiere examinado al testigo en un juicio anterior, quedando satisfecho con respecto á su. capacidad, no se hacía necesario volverlo á examinar en un juicio subsiguiente; y en los casos en que el acusado no hubiere pedido que se la volviera á examinar, ó no hubiere pedido que se la examinara con respecto á su capacidad, la admisión de su declaración no constituye un abuso de la discreción dèl Tribunal.''

De estas resoluciones la Corte Suprema de California, resulta, pues, como doctrina inconcusa, que no debe admitirse á declarar ante el jurado á ningún testigo menor de 10 años de edad, sin que previamente se haya investigado su capacidad por el tribunal y resulte con el discernimiento necesario para apreciar debidamente los hechos y saberlos exponer clara y exactamente.

En cuanto á la declaración del Dr. Casalduc contra la cual, como ya hemos visto, tomó también excepción la defensa del procesado en el acto del juicio, por haberle permitido el juez declarar sobre ciertos particulares que le revelara la interfecta en distintas ocasiones antes de su muerte, entendemos

que la resolución del Juez al permitir al testigo hacer aquellas revelaciones, envolvía un grave error jurídico, pues si bien no había inconveniente en que el Dr. Casalduc declarara como testigo al mismo tiempo que como perito, no debió permitírsele declarar sobre las revelaciones que le hiciera la interfecta por no ser admisible el testimonio de los testigos de referencia en ninguna causa, bien sea civil ó criminal, y cuyas revelaciones hemos de presumir en el presente caso que no debieron ser favorables al procesado cuando el juez las admitió por creer que con ellas se proponía el fiscal acreditar la mala conducta anterior del acusado, para destruir de esa manera la presunción que la ley establecía á su favor de ser considerado como de buen carácter moral, mientras no se probara lo contrario.

De manera, que contra el precepto de la ley que prohibe por regla general las declaraciones de los testigos de referencia, se permitió al Dr. Casalduc relatar las revelaciones que le hiciera la interfecta Felicia García, no para favorecer al procesado, que de ser así hubiera sido hasta cierto punto plausible la resolución del juez, sino para perjudicarle, para probar su mala conducta anterior y destruir de esa manera la presunción de buena conducta que la ley establecía á su favor. El error no puede ser más notorio ni más trascendental.

Si las revelaciones de la infortunada Felicia se las hubiera hecho al Dr. Casalduc momentos antes de morir y próxima ya á comparecer ante la presencia del Juez Supremo, quizás podríamos permitir que esas revelaciones constaran en el récord; pero en las circunstancias en que, según refiere el testigo, le fueron hechas por la García, días antes del suceso que le produjo la muerte, sin la garantía del juramento, y ante el peligro de que esas revelaciones fueran inspiradas por el despecho que la causara la conducta cruel que con ella observaba el acusado, ante semejante peligro, esas revelaciones no han debido ser oídas por el jurado, ni permanecer escritas en el récord.

Las demás infracciones legales que cita la defensa en su alegato presentado ante esta Corte Suprema, carecen absolutamente de importancia.

Que la sentencia se dictara fuera del término que al efecto señala el artículo 309 de la Ley de Enjuiciamiento Criminal, que es una de las infracciones legales que se citan por la defensa, no es de tomarse en consideración, porque se funda en una traducción equivocada del artículo 309 de la citada ley procesal, como ya lo hemos hecho notar otras veces; y en cuanto á la infracción que también se alega de los artículos 236 y 237 de la misma Ley de Enjuiciamiento Criminal, como carecemos de una exposición completa del caso, aprobada por el juez, que nos permitiera entrar en el examen detenido de las pruebas, no podemos juzgar si el veredicto y la sentencia se ajustan ó no á los preceptos citados de la expresada ley procesal.

Empero si estas alegaciones de la defensa carecen absolutamente de importancia, no sucede lo mismo por lo que respecta á los errores cometidos por la corte sentenciadora al admitir como testigos de cargo al niño de cinco años Aurelio Vélez, que por su corta edad debía considerarse inhábil para declarar, mientras no se acreditara cumplidamente su capacidad, y el testimonio de referencia del Dr. Casalduc.

Sobre este particular son también muy interesantes las siguientes resoluciones de la Corte Suprema de California.

En el caso de *Santillan* v. *Moses,* 1 Cal., 92, declaró la corte, lo siguiente:

"Si se permite que se practique ante el jurado una prueba improcedente, se concederá un nuevo juicio, á no ser que el tribunal estime que tal prueba no pudo tener influencia alguna en el veredicto."

En el caso de *Innis* v. *The Senator,* 1 Cal., 459, declaró también la corte:

"Cuando se somete al jurado alguna prueba improcedente, á la que se haya objetado, se concederá un nuevo juicio por virtud de una ape-

lación, á no ser que el tribunal estime que no era posible que tal prueba hubiera tenido efecto alguno en el jurado, que fuera perjudicial al apelante.''

Nosotros no podemos juzgar en el presente caso, si las declaraciones de los testigos de cargo, el niño Aurelio Vélez y el Dr. Casalduc, pudieron ó no tener alguna influencia en el jurado en contra del acusado, porque no conocemos el contenido de esas declaraciones; pero así como no han podido ejercer ninguna influencia en el jurado, han podido ejercer alguna, y esto es lo bastante para que debamos considerar lesionados los derechos sustanciales del acusado, con la admisión de esa prueba improcedente.

Pero hay más aún. Esa misma Corte Suprema de California ha declarado en el caso de *Spanagel* v. *Dellinger,* 38 Cal., 278:

''Comete error el tribunal que haya conocido de una causa, sin la intervención del jurado, y deniegue una moción para que se celebre un nuevo juicio, cuando el mismo tribunal admite que durante el juicio se practicaron pruebas improcedentes, aún cuando en su opinión la decisión y la sentencia hubieran sido las mismas si la prueba improcedente no hubiera sido admitida.''

Luego si en ese caso consideró la Corte Suprema de California procedente la revocación de la sentencia y la celebración de un nuevo juicio por haberse admitido pruebas improcedentes, aún cuando en opinión de la corte sentenciadora el resultado hubiera sido siempre el mismo, con mayoría de razón debe dictarse aquel mismo pronunciamiento en el presente caso cuando no resultan méritos para poder apreciar que el veredicto del jurado hubiera sido igual, aún prescindiéndose de las declaraciones de los dos testigos expresados.

Ahora bien; con arreglo al artículo 303 de la Ley de Enjuiciamiento Criminal, uno de los casos en que procede la celebración de un nuevo juicio, es, precisamente, ''cuando el

tribunal hubiere erróneamente informado al Jurado acerca de algún punto de derecho, *ó se hubiere equivocado en la decisión de alguna cuestión legal surgida durante la sustanciación del juicio.*"

El artículo 363 de la misma ley autoriza también á esta Corte Suprema, en los casos de apelación contra una sentencia dictada en causa criminal, para revisar cualquiera de los decretos ó providencias intermediarias, que giren sobre el mérito del asunto, ó que hayan podido afectar el fallo; y, según el artículo siguiente, puede también, si lo considerare justo, dictar ú ordenar la celebración de un nuevo juicio.

Por último; la Ley de la Asamblea Legislativa de esta Isla, de 30 de mayo de 1904, confirma y ratifica todo lo establecido en los artículos citados de la Ley de Enjuiciamiento Criminal, al prescribir que "siempre que resultare de los autos de alguna causa criminal apelada á la Corte Suprema, que cualquier requisito legal haya sido desatendido por el tribunal sentenciador, no se anulará la sentencia, á ménos que el *error que de los autos resultare, tendiere á perjudicar los derechos de cualquiera de las partes, y se hubiere interpuesto la debida excepción en el tribunal sentenciador; disponiéndose, sin embargo, que el tribunal de apelación podrá conocer de errores fundamentales que aparecieren en los autos, aún cuando no se hubiere interpuesto objeción á ellos, y fallar sobre los mismos con arreglo al derecho que de los hechos se desprendiere.*"

En cuya virtud; y en mérito de todas las consideraciones expuestas, esta corte es de parecer que debe revocarse la sentencia apelada de 29 de marzo de 1906, dictada en esta causa por la Corte de Distrito del Distrito Judicial de Mayagüez, y remitirse la causa á la misma Corte de Distrito, para la celebración de un nuevo juicio.

*Decretado un nuevo juicio.*

Jueces concurrentes: Sres. Hernández y MacLeary.

Los Jueces Asociados Sres. Figueras y Wolf no estuvieron conformes con todos los fundamentos de la opinión, aunque sí con la sentencia.

## VOTO CONCURRENTE DEL JUEZ ASOCIADO SEÑOR WOLF.

Durante el curso del juicio en la corte inferior se presentó como prueba la declaración oral de un niño de nueve años de edad. Ciertamente que la corte hubiera cometido error permitiendo declarar á este niño sin examinarlo previamente con respecto á su capacidad. Sin embargo, no hay nada en los autos que pruebe que tal declaración, si se dió, fuera con el objeto de perjudicar los derechos del acusado, condición esencial para una revocación, según lo prescribe la ley de Mayo 30 de 1904, (p. 11, leyes de la sesión especial, 1904.)

De todo lo que se vé en los autos, el Fiscal pudo haber eliminado al testigo, ó las cuestiones acerca de las cuales declaró pudieron haber sido consideradas como inofensivas ó haberse probado que el muchacho, aunque menor de diez años, estaba tan capacitado para contestar como cualquier otra persona. En cualquiera de estos casos la acción equivocada de la corte no hubiera sido perjudicial.

La Corte Suprema de los Estados Unidos en el caso de *Cummingham* v. *Springer,* 204 U. S. p. 653, caso civil, ha demostrado que no tomará en consideración el error que no es perjudicial. *Pueblo* v. *Brown,* 130 Cal., 592, un caso de homicidio; fué un caso en que se hizo una denuncia ante el tribunal de apelación de que la corte inferior había cometido error al modificar cierta instrucción dada con respecto á personas moribundas. Pero como ninguna de estas declaraciones (*dying declarations*) fueron presentadas se consideró que la corte inferior no había cometido error alguno. En el mismo caso se dijo que no era error perjudicial el hacer al testigo ciertas preguntas con las que se trataba de probar su capacidad para declarar con respecto á la declaración de un moribundo (*dying*

*declarations*) cuando la misma realmente no fué presentada como prueba.

De igual modo, la naturaleza de la prueba que dió el Dr. Casalduc con respecto al acusado no fué incluída en los autos.

Sin embargo, cualquier prueba que pudiera ser reflejada en el carácter del acusado, se consideraría, en un caso de asesinato, perjudicial á los derechos del acusado, y por tal error, estoy de acuerdo con la sentencia dictada por la corte.