El Pueblo de Puerto Rico, demandante y apelado, *v.* Álvaro Walker, acusado y apelante.

Núm. 7360.—*Sometido:* Febrero 9, 1939. *Resuelto:* Marzo 31, 1939.

*R. Rivera Correa,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

La denuncia, en lo pertinente, dice:

"El referido acusado Álvaro Walker, allí y entonces, de una manera ilegal, voluntaria y maliciosamente, tenía en su poder materias o sustancias que unidas entre sí resultan un fuerte explosivo, con el fin de aterrorizar o causar daño a cualquier propiedad."

En su parte primera se expresa que se formula por infracción al artículo 12 de la Ley núm. 67 de 1934 (pág. 459).

El título de esa ley es como sigue: "Para reglamentar la· manufactura, posesión, almacenaje, transporte, venta o dona-- ción de explosivos en Puerto Rico, definiendo los delitos, estableciendo penas, declarando una emergencia, y para otros· fines."(Pág. 459.)   Y la sección pertinente de la misma, que· es la 12, ordena:

*"Artículo 12.—Posesión con la Intención de Hacer Daño.—Castigos.*—Cualquier persona que tenga en su poder dinamita u otro explosivo químico o sustancia con la intención de usarlo para hacer daño corporal, de aterrorizar o asustar a cualquier persona, o de hacer daño o destruir cualquier propiedad, o de hacer daño a la misma en cualquier forma, podrá ser castigada, convicta que fuere, a pagar una multa de no menos de ciento cincuenta (150) dólares ni más de tres mil (3,000) dólares, o con cárcel y trabajos forzados por un término de no menos de seis meses ni más de cinco años."

Se castiga, pues, la posesión—con la intención indicada— *de dinamita u otro explosivo químico o substancia.* Lo que introduce confusión es el uso de la palabra substancia que no se encuentra en ninguna otra parte de la ley.

Ésta por su artículo primero dice que se aplicará a la manufactura, posesión, almacenaje, transporte, venta o donación de *explosivos según se definen en el artículo segundo.*

La definición del artículo segundo es:

" 'Explosivo o explosivos' comprenderá cualquier compuesto químico o mezcla mecánica que contenga unidades oxidantes y combustibles u otros ingredientes en tales proporciones, cantidades o en tal envoltura que al ser encendida por el fuego, por fricción, conmoción, percusión o detonador cualquier parte de dicho compuesto o mezcla, pueda causar una repentina reproducción de gases calientes en grado tan alto que las presiones gaseosas resultantes sean capaces de producir efectos destructores de vidas, de miembros, o de los objetos contiguos, pero los que no incluirán la gasolina, el petróleo, la nafta, trementina, bencina, nitrocelulosa coloidal en hojas, o en barras, o granos de no menos de un octavo de pulgada de diámetro, nitrocelulosa mojada y un compuesto de almidón y nitro mojado (*wet nitro starch*) que contenga un veinte por ciento o más de humedad o de ácido pícrico mojado que esté mojado en o que contenga un diez por ciento o más de humedad. Los artículos manufacturados, tales como balas, (*fixed ammunition*) para armas pequeñas, petardos, mechas de seguridad, fósforos, etc., no se considerarán como explosivos cuando las unidades individuales contengan explosivos en cantidad tan limitada, de tal naturaleza, o en tal envoltura que no sea posible que puedan producir una explosión simultánea destructora de dichas unidades en perjuicio de vidas, miembros o propiedades."

El artículo 3 se refiere al *embalaje de explosivos* y al *almacenaje* el 4.

Los artículos 5, 6 y 7 a los polvorines para *guardar legalmente los explosivos*. El octavo a las licencias para *almacenaje de explosivos*. El noveno al *transporte de explosivos*. El décimo al *registro de ventas o donaciones de explosivos* y el undécimo al *uso ilegal de explosivos*.

Todos tratan, pues, exclusivamente de explosivos. Es en el duodécimo que se emplean las palabras "dinamita" que tiene una acepción especial y "sustancia" cuya acepción es general y que teniendo en cuenta el propósito y el alcance de la ley debe necesariamente circunscribirse a substancias de naturaleza explosiva.

¿Cuál fué la intención del legislador al usar el término sin determinación expresa? ¿Fué la de incluir un caso como el que se imputa en la denuncia, esto es, la posesión con el fin de aterrorizar o causar daño de substancias que unidos formen el explosivo?

Es cierto que el uso del singular incluye el plural pero siempre tendría que tratarse de substancias explosivas, no pudiendo extenderse el significado a substancias que mezcladas formen el explosivo. En la definición se habla de mezcla y por mezcla se entiende algo que está hecho, no que esté por hacer.

Quizá la verdadera intención de la Legislatura fué la de incluir entre los punibles el hecho de la posesión con el dañado propósito indicado de sustancias que mezcladas entre sí produzcan el explosivo, a fin de evitar que se eluda su prohibición, lo que se lograría fácilmente teniendo todos los ingredientes listos y dejando su mezcla para el último momento, pero si ello fué así, no llegó a expresar su pensamiento con aquella claridad y certeza que nuestras instituciones exigen para que una persona pueda ser castigada por la comisión de un delito.

Para que el hecho imputado en la denuncia quedara comprendido en la ley, ésta tendría que enmendarse de manera que

dijera ''dinamita u otro explosivo químico o substancia explosiva o substancias que mezcladas formen un explosivo'', o algo semejante.

Siendo ése el caso, debió prosperar la excepción perentoria de no constituir delito público los hechos denunciados formulada por el acusado, habiéndose cometido por la corte en tal virtud el primero de los errores señalados al declarar sin lugar dicha excepción.

*Debe, en su consecuencia, prosperar el recurso, revocándose la sentencia apelada y absolviéndose al acusado, sin que sea necesario considerar y resolver el otro señalamiento de error.*

El Juez Asociado Sr. Wolf está conforme con el resultado.*