EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL RUIZ VÉLEZ, RICARDO CRUZ CORTÉS y ANTONIO RODRÍGUEZ DÍAZ, acusados y apelantes.

*Número:* 17388    *Resuelto:* 24 de mayo de 1962

*José Torres Ortiz* y *Julio Suárez Garriga,* abogados de los apelantes; *J. B. Fernández Badillo, Procurador General,* y *Arturo Estrella, Procurador Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Los cuatro acusados llegaron juntos a Mayagüez. En esta ciudad se dirigieron a un hotel a solicitar dos habitaciones para alojarse. La policía intervino con ellos cuando estaban en esta gestión y de allí se dirigieron al cuartel. Accedieron voluntariamente a que se registrara el automóvil en que viajaban y el conductor hizo entrega de la llave del baúl del vehículo, donde la policía encontró ocho botellas conteniendo una mezcla de gasolina, aceite y tetraetilo, que se usa como bomba incendiaria y que comúnmente se conocen como bombas Molotov. Fueron acusados de violar la sección 12 de la Ley Núm. 67 de 13 de mayo de 1934, 25 L.P.R.A. sec. 492.[1] Declarados culpables por el jurado la corte los condenó a sufrir de 5 a 10 años de presidio.

De los cuatro acusados,[2] tres no presentaron prueba y el otro descansó en su propio testimonio como defensa. Para sostener sus recursos los apelantes imputan la comisión de varios errores.

1. Consideraremos en primer término el que se refiere a la resolución del tribunal de instancia declarando sin lugar una moción de absolución perentoria, presentada por la defensa al terminar la prueba de cargo.

Se imputó a los acusados la violación del artículo 12 de la Ley de Explosivos porque "ilegal, voluntaria, maliciosa y criminalmente tenían en su poder ocho (8) botellas de a cuartillo, conteniendo substancias explosivas . . . con la intención de usarlas para hacer daño corporal y de hacer daño o destruir propiedad". Sostienen los apelantes que

---

[1] Los apelantes fueron acusados de violar la Ley de Armas, 25 L.P.R.A. sec. 492, en sus aspectos de *felony* y *misdemeanor*, y fueron absueltos al declararse con lugar una cuestión de derecho presentada por la defensa. Las armas fueron ocupadas en la habitación del hotel, antes de que ellos tomaran posesión definitiva de ésta.

[2] Uno de los acusados, luego de apelar, desistió de su recurso.

"[e]l delito se comete solamente si concurren dos elementos, la posesión y la intención, que en este caso es una intención específica". Invocan el caso de *Pueblo* v. *Walker*, 54 D.P.R. 576 (1939). En ese caso la acusación leía así en su parte pertinente: "ilegal, voluntaria y maliciosamente, tenía en su poder materias o substancias que unidas entre sí resultan un fuerte explosivo, con el fin de aterrorizar o causar daños a cualquier propiedad". Revocamos la resolución del tribunal de instancia que declaró sin lugar una excepción perentoria de falta de hechos. Nos fundamos en que la ley tal cual estaba redactada no hacía punible estar en posesión de substancias que en sí no eran explosivas, aunque una vez mezcladas entre sí produjeran el explosivo.

Luego de invocar el caso de *Walker*, los apelantes nos llaman la atención a la declaración del químico, testigo de cargo, que analizó el contenido de las botellas ocupadas. Declaró este testigo que la materia que contenían las ocho botellas "se usa para quemar, para incendiar, pero no es explosivo".

El artículo 12 estaba redactado en la siguiente forma cuando ocurrieron los hechos que se le imputaron a *Walker:* "Cualquier persona que tenga en su poder dinamita u otro explosivo químico o substancia con la intención de usarla para hacer daño corporal . . ." pero en el 1951 fue enmendado por la Ley Núm. 13 de ese año para que leyera así: "Cualquier persona que tenga en su poder dinamita u otro explosivo químico o substancias que mezcladas formen un explosivo con la intención de usarlo para hacer daño corporal . . .". Además se le introdujo una enmienda al artículo 2 de la ley, que define el término "explosivo o explosivos". La enmienda consistió en adicionarle lo siguiente: "a los efectos de los artículos 11, 12 y 12a, el término 'explosivo o explosivos' también comprenderá e incluirá la gasolina, el petróleo, la nafta trementina, bencina, bisulfuro de carbono, éter, éter de petróleo, kerosene o cualquier otra substancia inflamable que por sí sola o mezclada con otra substancia

pueda con ella producirse daño a las personas o a la propiedad, siempre que cualquiera de estas substancias se posea con la intención expresada en el artículo 12 de esta ley". ■

Así, la Asamblea Legislativa enmendó la ley para corregir las deficiencias que apuntamos en el caso de *Walker*, y fue un poco más lejos al no requerir que la mezcla de las substancias produzcan un explosivo y sólo requerir que puedan producir daño a las personas o a la propiedad. Se estableció como delito poseer las substancias que se enumeran o cualquiera otra substancia inflamable "que por si sola o mezclada con otra substancia pueda con ello producirse daño a las personas o a la propiedad". Ya sabemos que el químico declaró que la substancia que contenían las ocho botellas ocupadas, una mezcla de gasolina, aceite y tetraetilo, se usaba para quemar o para incendiar. ■

El artículo 13 de la Ley Núm. 67 de 1934, 25 L.P.R.A. sec. 494, establece que "[e]n el juicio de cualquier persona acusada de haber cometido cualquiera de los delitos mencionados en el artículo 12 de la presente, si se le prueba la posesión de dicho explosivo, se considerará dicha prueba como evidencia *prima facie* de intención ilegal, y el peso de la prueba para demostrar que la posesión era legal recaerá sobre el acusado". La prueba de cargo demostró que los cuatro acusados andaban juntos, que en su automóvil ocuparon bombas incendiarias conocidas por bombas Molotov, que en virtud de la enmienda de 1951, son consideradas como explosivos a los efectos de la Ley Núm. 67 de 1934. Y hemos visto en el artículo 13 de esa ley que establece que la posesión de explosivos se considera "como evidencia *prima facie* de intención ilegal, y el peso de la prueba para demostrar que la posesión era legal recaerá sobre el acusado." La disposición transcrita tiene el propósito de proteger al ciudadano. La Asamblea Legislativa pudo haber establecido que la mera posesión de explosivos, tal como se define en la ley, constituye un delito sin necesidad de que se establezca la intención con que son poseídos. Así lo ha hecho en los delitos de adul-

teración de leche y de portar armas. *Pueblo* v. *Andrades González*, 83 D.P.R. 849 (1962) ; *Pueblo* v. *Rivera*, 75 D.P.R. 425 (1953) y *Pueblo* v. *Bou*, 64 D.P.R. 466 (1945). Véanse además: *United States* v. *Balint*, 258 U.S. 250 (1922) ; 1 Wharton's *Criminal Law & Procedure*, sec. 60 (1957) ; cf. *Smith* v. *California*, 361 U.S. 147 (1959) ; *Holdridge* v. *United States*, 282 F.2d 302 (8vo. cir. 1960). Pero teniendo conocimiento la Asamblea Legislativa de que puedan usarse explosivos para fines industriales, etc., optó por establecer una presunción de intención *prima facie*, pudiendo entonces demostrarse que la posesión era para fines legales. Si la evidencia presentada por los acusados creaba en el jurado una duda razonable de si la posesión de las bombas incendiarias era legal, procedía entonces la absolución de los acusados. Aquí el Estado estableció la posesión. Eso era suficiente. No erró el tribunal de instancia al declarar sin lugar la moción de absolución perentoria. ■

2. Apuntan como error los apelantes, el que se admitieran en evidencia las armas que se les imputaba portar, un puñal, una pistola y unas balas. Pero la cuestión es que los acusados fueron absueltos de los delitos de portar armas que se les imputaron, por lo que sería académico discutir lo que este error plantea. Ahora, relacionado con esta evidencia se levanta un error que consideramos fue cometido por el tribunal: haber permitido que las armas, presentadas en evidencia pasaran al jurado. Obviamente esta evidencia no debió pasar al jurado, pero entendemos que el error cometido no afectó adversamente a los acusados, toda vez que el juez absolvió a los acusados del *misdemeanor* en presencia del jurado y le ordenó que los absolvieran del delito grave.

3. La impugnación que hacen los apelantes de la admisión de las botellas ocupadas no tiene mérito. La prueba demostró que los acusados llegaron juntos a Mayagüez, y fueron juntos al hotel de donde pasaron al cuartel de la policía. Las ocho botellas fueron ocupadas en el automóvil donde los

acusados viajaban. Esto era suficiente para establecer la conexión entre los acusados y las ocho botellas ocupadas en el vehículo. ■

4. Pasemos a considerar otra de las cuestiones levantadas. Dicen los apelantes que "[e]xistiendo como prueba la declaración jurada de Frank Rodríguez Morales y el testimonio de Rafael Ruiz Vélez, que eran coautores o principales de los delitos imputados, el Tribunal debió dar instrucciones específicas al Jurado sobre corroboración aun en el caso de que la defensa no pidiese la misma". Pero es que a poco que se examinen la declaración prestada por el coacusado Rodríguez Morales, y el testimonio de Ruiz Vélez, encontraremos que en forma alguna constituye evidencia contra los coacusados, ni contra los mismos declarantes. La declaración de Rodríguez Morales, y el testimonio de Ruiz Vélez son exculpatorios. Por esa misma razón era innecesario instruir al jurado al efecto de que la declaración de Ruiz Vélez no era prueba contra los demás acusados. Nada de lo contenido en su testimonio incriminaba a los otros acusados.

5. Los apelantes objetan las instrucciones que trasmitió el juez de instancia sobre "intención para cometer el delito imputado". Al efecto el juez los instruyó así: ■

"Debo advertirle a ustedes que como la intención en todo caso es un estado de la mente, a menos que no se exprese la intención con la cual uno posee una cosa, ustedes no podrían saber cuál es la intención con la cual se posee, pero la intención, dice la ley y la jurisprudencia, puede inferirse de las circunstancias que rodean la comisión del delito, en qué forma y circunstancias era que se transportaba la cosa constitutiva del delito, la materia, la cosa misma que se alega constituye el delito. Ustedes pueden verla, palparla, la pueden inferir de la cosa misma y todas las circunstancias que rodean el delito, incluyendo la prueba objetiva corroborada por la prueba testifical y la prueba documental ofrecida, de modo que ustedes, en conjunto, puedan apreciar las circunstancias del caso para hacer una determinación sobre con qué intención se poseía el objeto que se alega como explosivo en este caso."

Estas instrucciones beneficiaron a los acusados. El juez. no les explicó adecuadamente cuál era la ley. Ya hemos. visto que el artículo 13 de la Ley Núm. 67 de 1934 establece: que la posesión de "explosivos" tal cual se define en la ley y específicamente en los casos del delito imputado a los ape-- lantes, que la posesión "se considerará como evidencia *prima. facie* de intención ilegal*", y que "el peso de la prueba para, demostrar que la posesión era legal recaerá sobre el acusado".. Nada de esto le informó el juez al jurado. Y recordemos. que tres de los acusados no presentaron prueba de defensa de clase alguna. No explicaron con qué propósito tenían el. material ocupado. Oportunidad tuvieron de hacerlo y prefi-- rieron descansar en la moción de absolución perentoria. Al único acusado que presentó prueba, su propia declaración,. el jurado no le dio crédito.

6. Manifiestan los apelantes en su alegato que "[c]ree- mos que la totalidad de la prueba presentada por el Pueblo,. no es tan robusta y conveniente [sic] como para excluir la hipótesis, más allá de cualquier duda razonable, de que los. acusados no tenían conocimiento de la existencia de las llama- das bombas Molotov, o si por el contrario tenían ese conoci-- miento, que desconocían el uso específico a que se destinarían, o sea con la intención que se poseían". Y más adelante sos-- tienen que "[e]n este caso, sin embargo se le imputa a todos. los acusados ser principales en la comisión de un delito y su convicción ha sido mediante el uso, sino en su totalidad en su mayoría de prueba circunstancial". Creemos que para declarar culpables a todos los acusados mediante prueba circunstancial se hace necesario que todas las circunstancias probadas concurran y que las mismas no sean inconsistentes. con cualquier otra conclusión o hipótesis razonable de evi- dencia. Para sostener esto último invocan a *Pueblo* v. *Almodóvar*, 71 D.P.R. 20 (1950) y *Pueblo* v. *Arteaga*,. 70 D.P.R. 668 (1949).

Ya hemos visto que la Ley Núm. 67 de 1934 establece una presunción en cuanto a la intención se refiere como.

ingrediente del delito de poseer explosivos. En cuanto a la cuestión del grado de prueba que se necesita para condenar con evidencia circunstancial—admitiendo para los efectos del argumento que la evidencia presentada fuera de ese carácter—la posición de los apelantes ignora nuestro dictamen en *Pueblo* v. *Bonilla*, 78 D.P.R. 152 (1955) siguiendo el caso de *Holland* v. *United States*, 348 U.S. 121 (1954) y del cual citamos lo siguiente: ■

". . . Los peticionarios atacan la negativa del juez sentenciador a instruir al jurado que cuando la evidencia del Pueblo es circunstancial, la misma debe ser tal que excluya cualquier hipótesis razonable que no sea la de culpabilidad. En las decisiones de los tribunales inferiores existe algún apoyo para esta clase de instrucción, *Garst* v. *United States*, 180 F. 339, 343; *Anderson* v. *United States*, 30 F.2d 485–487; *Stutz* v. *United States*, 47 F.2d 1029, 1030; *Hanson* v. *United States*, 208 F.2d 914, 916, pero la mejor regla es que cuando el jurado está debidamente instruído sobre las normas para duda razonable, una instrucción adicional de esta naturaleza sobre evidencia circunstancial es confusa e incorrecta, *United States* v. *Austin-Bagley Corp.*, 31 F.2d 229, 234 cert. denegado, 279 U.S. 863; *United States* v. *Becker*, 62 F.2d 1007, 1010; 1 Wigmore, *Evidence* (tercera edición), secciones 25–26.

"Evidencia circunstancial a este respecto es intrínsecamente igual que la evidencia directa o testifical. Se admite que la evidencia circunstancial puede en algunos casos conducir a un resultado enteramente incorrecto. Sin embargo esto es igualmente cierto de la evidencia testifical. En ambos casos, el jurado está llamado a pesar las ocasiones en que la evidencia correctamente indica culpabilidad frente a la posibilidad de una equivocación o una inferencia ambigua. En ambos casos, el jurado debe usar su experiencia con la gente y con los sucesos de la vida al apreciar las probabilidades. Si el jurado queda convencido fuera de duda razonable, nada más podemos exigir."

Luego de transcribir lo anterior dijimos en *Bonilla:*

"Si bien esto es una cuestión de ley local, creemos que la regla establecida por el caso de *Holland* es la mejor y la seguiremos. El caso de *Almodóvar* y los casos similares quedan por tanto expresamente revocados. Desde ahora, al apreciar la

492

evidencia en un caso criminal—y al instruir al jurado sobre la cuestión—los jueces sentenciadores no deben usar la norma de que para poder justificar la convicción la evidencia circunstancial debe ser inconsistente con cualquier otra hipótesis razonable de inocencia. Por el contrario, según se dijo en el caso de *Holland,* el problema es si la evidencia—bien sea circunstancial o testifical—establece la culpabilidad del acusado fuera de duda razonable."

Véanse además: *United States* v. *Sauver,* 294 Fed. 24, 30 (4to. cir. 1961) ; *United States* v. *Hamrick,* 293 F.2d 468, 470 (4to. cir. 1961) ; *United States* v. *Comer,* 288 F.2d 174, 176 (6to. cir. 1961) ; *Continental Baking Company* v. *United States,* 281 F.2d 137, 146 (6to. cir. 1960) ; *United States* v. *Olivo,* 278 F.2d 415, 418 (3ro. cir. 1960) ; Cf. *Curtis* v. *United States,* 297 F.2d 639 (5to. cir. 1961) ; *Riggs* v. *United States,* 280 F.2d 949, 955 (5to. cir. 1960).

7. Por último, los apelantes alegan que "el veredicto del jurado fue contrario a la prueba, siendo ésta insuficiente en derecho". Lo antes expuesto despacha este señalamiento.

*Se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de Mayagüez, en 14 de marzo de 1961.*