EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VENTURA SALGADO VELÁZQUEZ, acusado y apelante.

*Números:* CR-65-237   *Resueltos:* 25 de marzo de 1966
CR-65-238

*Félix Ochoteco, Jr.,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Nilita Vientós Gastón, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Tres hermanos de doble vínculo están envueltos en el presente caso. Uno es el acusado; otro resultó muerto por una bala disparada con un arma fuego. El tercero es testigo de cargo, quien había cumplido condena por un hecho de sangre.

El testigo relata que el día de Año Nuevo de 1964 llegó como a las tres de la tarde al negocio del acusado. Como estaba trasnochado dormitó al lado de una ventana. Le despertó el ruido que hizo un hermano suyo al pedirle al acusado que le sirviera un palo de ron. El testigo se levantó y fue tras el mostrador junto a su hermano el acusado. La víctima in-

crepó a ambos con palabras obscenas y les tiró con una botella vacía que fue a dar contra la pared. El testigo salió de detrás del mostrador, se dirigió hacia donde estaba el atacante y lucharon cuerpo a cuerpo. Mientras luchaban su adversario cayó al piso hacia atrás. Había sido herido en la cara con un "tiro de contacto" según lo describe el patólogo en el protocolo de la autopsia. No vio quien hizo el disparo que hirió a su hermano cuando luchaba con él cuerpo a cuerpo ni vio armas de fuego en las manos de su otro hermano, el acusado. Afirmó que vio a una persona en el negocio al lado de una máquina expendedora de cigarrillos, pero que no le vio arma en las manos. Observó a una señora por una de las ventanas pero afirmó que no era la testigo del fiscal que había sido juramentada al comenzar la vista del caso.

El otro testigo de cargo es una señora que vive en una casa contigua al negocio donde ocurrieron los hechos. Declaró que inmediatamente que oyó la detonación corrió hacia la tienda. Se asomó por una ventana y vio al acusado con una cosa chata en la mano. A preguntas del fiscal y del juez declara que era una pistola. Se admitió por estipulación el protocolo de la autopsia.

El fiscal renunció a los otros testigos.

La defensa presentó el testimonio de uno de éstos quien era uno de los agentes del orden público que se personó en el sitio de los hechos poco después de ocurridos.

La defensa se proponía establecer con el testigo que cuando éste llegó al sitio la señora que declaró como testigo de cargo le había informado que no sabía nada de lo ocurrido, pero al declarar en el juicio manifestó dicho agente que se dirigió a todos los que estaban por allí preguntándoles si sabían algo de lo que acababa de pasar y que nadie contestó y que no estaba seguro de que la testigo hubiera estado por allí. La defensa presenta entonces el testimonio de un abogado para establecer que el policía le había informado al abogado defensor, en su presencia, que la testigo le había dicho que no

sabía nada de los hechos del caso. Esa fue toda la prueba de la defensa.

El juez instruyó al jurado que podían traer un veredicto de no culpable o de culpable de asesinato en primer grado; culpable de asesinato en segundo grado o culpable de homicidio voluntario. Lo trajo de asesinato en segundo grado.

Para sostener el recurso interpuesto apunta que la prueba no estableció más allá de duda razonable la culpabilidad del acusado y que el veredicto si fuera de culpabilidad debería ser de homicidio.

■ La prueba antes relatada, creída como fue por el jurado establece más allá de duda razonable la culpabilidad del acusado y sostiene el veredicto rendido. Ya hemos resuelto siguiendo a *Holland* v. *United States*, 348 U.S. 121–139 (1954), en *Pueblo* v. *Bonilla*, 78 D.P.R. 152 (1955) que la evidencia circunstancial es intrínsecamente igual que la evidencia directa o testifical. Ver además, *Pueblo* v. *Ruíz Vélez*, 85 D.P.R. 483 (1962); *Pueblo* v. *Dávila Alonso*, 85 D.P.R. 450 (1962); *Pueblo* v. *Bonilla Figueroa*, 83 D.P.R. 295 (1961).

■ Como antes expresamos el testigo, hermano del acusado, había sido convicto de delito grave. La defensa solicitó que las instrucciones sobre este extremo debían redactarse así:

"El hecho de que el testigo Josué Delgado Velázquez [léase Salgado Velázquez] haya estado en presidio por razón de la muerte de un hombre es una circunstancia que ustedes deberán tomar en consideración en relación con la credibilidad que pueda merecerles el testimonio de dicho testigo."

El juez, sin embargo, las trasmitió así:

"Señores del Jurado, una de las maneras de impugnar la veracidad de un testigo es probando que ese testigo ha sido convicto por la comisión de un delito grave, felony. Aquí declaró ante ustedes como testigo de la acusación el ciudadano Josué Salgado Velázquez y este testigo contestó, a preguntas de la Defensa que

él y su hermano, el muerto, habían sido acusados de una muerte y que estuvieron en presidio. El hecho de que una persona haya estado convicta de delito grave, es repito, una de las maneras que concede la ley para impugnar la credibilidad de un testigo. Ahora, eso no quiere decir que por el hecho en sí de que una persona haya estado en presidio, su testimonio tenga que ser descartado por ese hecho. Queda siempre a la consideración del juzgador determinar el grado de veracidad que puede merecerle ese testigo a pesar de haber sido convicto anteriormente por un delito grave."

Las instrucciones trasmitidas por el juez son más completas y expresan el mismo concepto que las sugeridas por la defensa.

■ La defensa solicitó una instrucción y el juez en alta voz y en presencia del jurado manifestó "Denegada". El abogado defensor solicitó entonces que el juez expresara las razones que tuvo para su resolución. El juez expresó que lo haría constar al dorso de la instrucción rechazada como lo requiere la Regla 137 de Procedimiento Criminal de 1963.

Apunta como error el apelante que la negativa a trasmitir una instrucción no debe comunicársele al jurado. En *Pueblo* v. *Cortés*, 69 D.P.R. 344 (1948) resolvimos que hacerlo no constituía error. Ver además *People* v. *Maupins*, 158 Pac. 502 (Calif. 1916).

■ Sostiene el apelante que cometió error el juez al instruir al jurado en relación con el testigo presentado por la defensa para impugnar el testimonio del policía que presentó como su primer testigo. La instrucción fue correcta. Expresó el juez:

"Señores del Jurado, en relación con este testigo les instruyo a ustedes de la manera siguiente: usted (*sic*) no pueden pesar ni estudiar ni considerar para nada el testimonio del Sr. González como testimonio positivo aquí en relación con los hechos que se investigan. El Sr. González, letrado Sr. González, ha sido puesto a declarar por la Defensa únicamente con el propósito la Defensa de desacreditar ante ustedes su propio testigo, el policía Franqui. En otras palabras, para impugnar ante ustedes la credibilidad que el testigo Franqui, llamado por la Defensa,

pueda merecerle a ustedes. Pero no pueden, repito, interpretar ese testimonio ni considerarlo como testimonio positivo en relación con la culpabilidad o no de este acusado en la causa. ¿Está clara esa situación?"

.    .    .    .    .    .    .    .

"Ampliando, Señores del Jurado, la instrucción en relación con ese testimonio del Sr. González, tampoco pueden ustedes utilizar ese testimonio en el sentido de que él pretende impugnar el testimonio que ante ustedes prestó en Sala la testigo Carmen Escobar, doña Carmen. Para lo único que ustedes pueden utilizar ese testimonio y pesarlo es con el propósito que fue ofrecido por la Defensa, o sea, para impugnar el propio testigo de Defensa, policía Franqui."

*No habiéndose cometido ninguno de los errores apuntados procede la confirmación de las sentencias.*

El Juez Presidente Señor Negrón Fernández no intervino.