EL PUEBLO DE PUERTO RICO, apelado, *v.* FRANCISCO MARÍN QUIÑONES, acusado y apelante.

*Número:* CR-79-37        *Resuelto:* 19 de febrero de 1981

*Carmen Ana Rodríguez Maldonado, Vilma Santiago* y *Heyda Vigil McClin,* abogadas del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

### SENTENCIA

Por estar igualmente dividido el Tribunal, se confirman las sentencias apeladas.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Negrón García emitió opinión concurrente a la cual se unen los Jueces Asociados Señores Rigau, Martín y Díaz Cruz. El Juez Asociado Señor Dávila emitió opinión disidente y concurrente a la cual se unen el

Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Torres Rigual e Irizarry Yunqué.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Opinión concurrente y disidente del Juez Asociado Señor Dávila a la cual se unen el Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Torres Rigual e Irizarry Yunqué.

San Juan, Puerto Rico a 19 de febrero de 1981

La prueba de cargo estableció que como a las 10:30 de la noche un automóvil rojo con capota negra pasa frente a un negocio sito en la carretera que conduce de Canóvanas a Juncos. Cuatro individuos que vienen de la dirección en que iba el vehículo antes mencionado entran al negocio. Anuncian que es un asalto. Resultado: dos vidas segadas y una bolsa de $140 a $150. Huyen. La Policía es avisada e inmediatamente anuncia por radio lo ocurrido. Describe el vehículo en que viajan los asaltantes como rojo con capota negra.

Como a las once de la noche, al poco rato de ocurrir el asalto, un agente de la Policía que había escuchado el mensaje observó un vehículo que respondía a la descripción que había oído por la radio. Lo detuvo. Inquirió por la licencia. Cinco personas bajaron del vehículo. Uno permaneció en el vehículo. Era lisiado y sólo podía moverse en silla de ruedas. Dos se dieron a la fuga. Los otros fueron arrestados. Se ocuparon dos armas de fuego calibre 38 en la parte de atrás del vehículo "como por debajo del asiento delantero". Una de éstas tenía cinco casquillos y una bala sin disparar. La otra tenía cuatro balas y dos casquillos. Se le ocuparon $795 a Francisco Marín, el lisiado, que es el apelante en este recurso. A los demás arrestados no se les ocupó dinero. Las armas y las balas y los

casquillos ocupados fueron entregados al Laboratorio de la Policía. Ninguno de los tres testigos presenciales identificó al apelante como uno de los asaltantes.

Marín fue acusado de dos casos de asesinato en primer grado. También lo fue de robo, tentativa de asesinato y violación de la Ley de Armas.

Marín fue convicto de los delitos por los que fue acusado. Todas las sentencias fueron impuestas para ser cumplidas concurrentemente. La única cuestión que plantea el apelante es la insuficiencia de la prueba. Tiene razón en todos los casos, excepto en los de violación de la Ley de Armas. La prueba presentada no establece su culpabilidad más allá de duda razonable. La prueba de cargo ciertamente no establece que los cuatro asaltantes llegaron en el vehículo rojo con capota negra. Nadie los vio descender de ese vehículo ni de ningún otro. Ninguno de los testigos los vio abordar vehículo alguno al huir. Lo único que estableció la prueba fue que "[l]os cuatro (4) muchachos se fueron corriendo carretera abajo hacia Juncos". "Que no [se] vio vehículo ninguno y todos salieron corriendo".

Recuérdese que ninguno de los testigos presenciales del asalto sitúa al apelante en el negocio. Sólo lo sitúan en el automóvil rojo con capota negra que fue detenido tiempo después por la Policía. En el referido vehículo se ocuparon dos armas calibre 38 con balas y casquillos disparados y que fueron entregados al Laboratorio de la Policía. Fácil hubiera sido constatar los plomos recuperados en los cuerpos de las víctimas o en el local, aquellos que salieron de los cuerpos, con las armas ocupadas en el vehículo rojo y negro. Es interesante apuntar que al practicar la autopsia sólo se recuperó un proyectil de plomo de uno de los cadáveres "de una bala de aparente calibre 22". Por otro lado, los testigos presenciales hubieran podido identificar a los arrestados y establecer que fueron los que participaron en el asalto, conectando de esa manera al apelante. Ninguna de esas pruebas presentó el

fiscal. La deficiencia en la investigación y procesamiento de los delincuentes no puede ser compensada vulnerando los derechos fundamentales que garantiza la Constitución a todo ciudadano. Surge una duda razonable en cuanto a la culpabilidad del apelante en los casos de asesinato y tentativa de asesinato. Ver *Pueblo* v. *Serrano Nieves*, 93 D.P.R. 56 (1966).

Revocaría las sentencias apeladas, excepto las referentes a las infracciones de la Ley de Armas. Por eso disiento de la sentencia que confirma la dictada en los casos de asesinato y tentativa de asesinato y concurro con aquella parte que confirma las infracciones de la Ley de Armas.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García a la cual se unen los Jueces Asociados Señores Rigau, Martín y Díaz Cruz.

San Juan, Puerto Rico, a 19 de febrero de 1981

La lectura reflexiva y serena de la Exposición Narrativa mueve nuestro ánimo y conciencia judicial a concluir —al igual que persuadió al juez sentenciador y a los miembros del jurado— que se desfiló suficiente prueba *circunstancial, no contradicha,* demostrativa de la culpabilidad del apelante más allá de duda razonable y que procede la confirmación íntegra de las sentencias apeladas. *Pueblo* v. *Salgado Velázquez,* 93 D.P.R. 380 (1966); *Pueblo* v. *Picó Vidal,* 99 D.P.R. 708 (1971). Aún más, todo tiende a indicar que fue el autor intelectual del asalto y de los dos asesinatos ocurridos. Veamos.

No se cuestiona seriamente la identidad del automóvil "rojo con capota negra" que pasó frente al negocio; que momentos después, desde esa misma dirección, aparecen cuatro de los asaltantes; que cuatro de ellos tenían armas distintas; que luego del asalto y los homicidios huyen; que se da aviso a la Policía de que viajaban en un auto "rojo con capota negra";

que al poco rato son observados por un agente en carro patrulla y detenidos; que se bajaron cinco personas, y el apelante, lisiado, permaneció en el asiento delantero derecho; que dos se dieron a la fuga; que se ocuparon dos armas calibre 38 con balas y casquillos; que al apelante se le ocupó $795.00, y que las armas, balas y casquillos fueron entregados al Laboratorio de la Policía.

Ante estos hechos objetamos deferencialmente el análisis disidente que recomienda la absolución del apelante en los casos de asesinato. *Primero*, la conclusión en el sentido de que "la prueba de cargo ciertamente no establece que los cuatro asaltantes llegaron en el vehículo rojo con capota negra[; nadie] los vio descender de ese vehículo ni de ningún otro" parece exigir evidencia directa, olvidando el valor igual de la circunstancial. *Pueblo* v. *Salgado Velázquez*, supra, y *Pueblo* v. *Picó Vidal*, supra.

*Segundo*, siendo lisiado el apelante, es forzoso, por no decir ingenuo, el énfasis que se pone en que ningún testigo presencial lo sitúa en el lugar del negocio y escena del crimen. ¿Cómo esperarse que una persona así impedida vaya a exponerse a semejante riesgo y esfuerzo físico, cuando la rapidez y el evitar que sea identificado o señalado es esencial para el éxito de la operación criminal y encubrimiento de su participación?

Y *tercero*, por las razones que pasamos a enumerar, toda la discusión y efecto evidenciario sobre la prueba de balística y la recuperación de un plomo de bala de "aparente calibre 22", resulta altamente especulativo: (*a*) la dicción *aparente*, significa "que parece y *no* es", *Diccionario de la Lengua Española*, (1970) pág. 100. Por lo tanto no se le puede atribuir a esa simple caracterización verbal valor y realidad fáctica; (*b*) el señalamiento tampoco ha sido objeto de discusión por el apelante, y, por lo tanto no ha sido replicado por el Procurador General. Carecemos del beneficio de una ilustración integral forense adecuada; (*c*) de los autos no surge indicio alguno de que se hubieran realizado tales exámenes de balís-

tica, que éstos estuvieran disponibles y, por ende, fueran voluntariamente suprimidos como se da a entender en el disenso. No es aplicable, por lo tanto, esa presunción, y menos puede atribuírsele carácter de presunta verdad.

Vemos, pues, que el detalle de la bala de "aparente calibre 22" no tiene alcance ni valor probatorio alguno pues *no* se estableció efectivamente que fuera en *realidad* de ese calibre. Aun aceptándolo, la evidencia reflejó que cada uno de los cuatro asaltantes tenía un arma distinta, lo que contrasta con que se ocuparon solamente dos revólveres. Podríamos teorizar, pero nos abstenemos, que la "aparente bala calibre 22" pudo ser disparada por uno de los dos asaltantes que huyeron. A juicio nuestro, habiendo otras armas, es remoto el conjeturar sobre la concordancia entre el dato impreciso e inexacto del "calibre 22" con los dos revólveres calibre 38 ocupados. También lo serían otros extremos no discutidos por las partes y no cubiertos cabalmente, por no estar en disputa, en la Exposición Narrativa de la Prueba. (¹)

Una cosa es resolver un caso bajo la óptica de la deseabilidad de que el Ministerio Público hubiese presentado prueba directa, pero otra es concluir que la circunstancial, no rebatida ni contradicha, es insuficiente. Del conjunto de hechos probados se puede inferir prudente y racionalmente la culpabilidad del apelante más allá de duda razonable.

Existe prueba consistente de circunstancias prospectivas, concomitantes y retrospectivas que así lo establecen. *Pueblo* v. *Torres Nieves*, 105 D.P.R. 340, 346 (1976); *Pueblo* v. *Ortiz Rodríguez*, 100 D.P.R. 972, 979 (1972).

---

(¹) A manera de ejemplo, no consideramos correcto argüir que "[p]or otro lado los testigos presenciales hubieran podido identificar a los arrestados y establecer que fueron los que participaron en el asalto, conectando de esa manera al apelante", como tampoco lo sería la argumentación de las razones por las cuales el apelante solicitó y obtuvo juicio por separado.